**Terre Haute & Ind. R. R. Co. v. Peoria & P. U. Ry. Co.**

61    405
167s  296
61    405
81    448

1.  RAILROAD COMPANIES—*When Not Amenable to the Union Depot Act.*—A railroad company, incorporated under the general law to build, own and operate a line of railroad, having tracks and terminal facilities, including freight and passenger depots as a part of its railroad system, and doing business of a general character by running daily trains, is not amenable to the statute governing union depots, because its depot is used by other railroad companies to which it leases terminal facilities, etc.

2.  SAME—*Can Not be Compelled to Make Contracts.*—An independ-

ent railroad corporation can not be compelled by the courts to make contracts with other railroad corporations.

3. SAME—*Contract for the Use of Tracks—Provisions Against Assigning the Right.*—Under a contract for the use of terminal facilities, tracks, etc., by one railroad company with another, containing a provision that the contractee shall not, by any contract with any other railroad corporation or the owner or owners of any railroad, give to such corporation or owner the right for its trains to pass over or use the railroad of the contractor without its consent, etc., the right to use such tracks, etc., does not pass to the successors or assigns of the contract without the consent of the contractor under the provisions of the contract.

**Bill for an Injunction.**—Appeal from the Circuit Court of Peoria County; the Hon. THOMAS M. SHAW, Judge, presiding. Heard in this court at the May term, 1895. Affirmed. Opinion filed December 10, 1895.

## STATEMENT OF THE CASE.

The following statement of the case is adopted by us from the statement of the case by appellee's counsel, being in our opinion a fair and concise statement.

The decree here appealed from was entered on the hearing of a motion to dissolve the interlocutory injunction ordered issued by the master in chancery on the *ex parte* application of the complainant. This motion was heard on bill, answer and affidavits. After the court had announced its conclusion that the injunction should be dissolved, a stipulation was filed that the decree to be made might go to the same extent as though entered on a final hearing of the case.

The principal matters mentioned in the record are these: "The Illinois Midland Railway Company formerly owned a line of railroad extending from Farmdale, a point on the T. P. & W. Railway four miles east of Peoria, to a point in the eastern part of this State, west of Terre Haute. The property of that company was in the hands of receivers from 1881 until some time in 1887. During part of that period Louis Genis was the receiver. On May 10, 1881, he, as such receiver, made a contract with the Peoria & Pekin Union Railway Company, the appellee, for the use of the tracks

and terminal facilities of that company in and near the city of Peoria. The contract was to extend 'For and during the full term and period of the receivership of the said Genis, or his successors as such receiver, with the right or privilege to the said Illinois Midland Railway Company or any purchaser or owner of the property of said company, at the termination of said receivership to extend his contract and lease to and for the full period of fifty years from February 1, 1881.' The tracks and property covered by this contract, and the manner in which the same were to be enjoyed by Genis, the receiver, are particularly specified in the contract, from which it will appear that he obtained the right to run his trains into the city of Peoria upon the tracks of appellee, but that all handling of cars in the city, switching to the various industries, making up and distributing trains, and other work pertaining to such business, was to be done by appellee.

The contract provides, among other things, that the 'Party of the second part and his successors and assigns, as aforesaid, shall not assign, transfer or underlet the right and privileges hereby granted, or any of them, without the consent of the said party of the first part expressed by a resolution of its board of directors, approved by all the members of said board; nor shall it, he or they, have the right by any contract with any other railroad corporation, or the owner or owners of any railroad, to give to such corporation or owner the right for its trains to pass over or use the railroad of the party of the first part; provided that any purchaser of the property in charge of the said receiver, as party of the second part, under any sale thereof made by virtue of any mortgage or deed of trust, or at any judicial sale thereof, may, at his option, by such sale acquire the rights of the party of the second part under this agreement, and be subject to and bound by all the covenants and provisions hereof.'

The contract provides for different charges to be paid by said Genis or his successors, including a fixed charge of $13,000 per annum, to be paid in equal monthly installments.

The receivers did not keep up the payment of these charges and in consequence thereof were excluded from the use of appellee's tracks for part of the period of the receivership.

The Terre Haute & Peoria Railroad Company purchased the property operated by Genis and others as receivers, and commenced the operation thereof on or about the month of February, 1887. The proof shows that the last named company never elected to adopt the Genis contract, but was permitted to run its trains into the city of Peoria over appellee's tracks, and to pay rentals and charges at the same rate previously paid by Genis.

The correspondence mentioned in this affidavit shows that the Terre Haute & Peoria Railroad Company was requested to decide whether it would adopt the old contract, and that in reply to that request, D. H. Conklin, the vice-president of the Terre Haute & Peoria Railroad Company, wrote that his previous communication on the subject 'was intended as notice of desire to seek modification of the Illinois Midland contract with your company and which runs to its successors, the Terre Haute & Peoria R. R.,' and that it was possible that he might get over to see the superintendent of the P. & P. U. the following week. Mr. Pinkney was connected with the treasurer's office of appellant during the entire period. He looked after the bills against and collections from the various companies dealing with appellee, and, with the knowledge acquired from his position, makes the statement that his understanding was that the Terre Haute & Peoria Railroad Company was using the tracks and terminals of appellee under a temporary arrangement from month to month, and not under the Genis contract."

Mr. Conklin, in the correspondence above referred to, intended to leave the matter where his company would not be bound for any definite period, and, if it was now seeking to withdraw from the use of appellee's tracks it would be authorized to claim that, under the correspondence above mentioned, there was no election to adopt the Genis contract, but rather a notice of a contrary intention.

. After the correspondence mentioned, the Terre Haute & Peoria R. R. Co. was permitted to use the tracks and terminal facilities of appellee until October 1, 1892, paying a monthly fixed charge equal to $13,000 per year, and the other rates and charges provided for in the contract between appellee and all other tenant lines that were applicable to that company. About the date last mentioned appellant took possession of the railroad and property of the Terre Haute & Peoria Railroad Company, under a lease and agreement in evidence. Prior to that time the Terre Haute & Peoria Railroad Company had been notified that it would not be permitted to continue the use of defendant's tracks after October 1, 1892, unless it paid the fixed rental charge of $22,500 per year, being the same charge paid by the other railroad companies using appellee's tracks. Appellant was also notified, before it commenced the use of appellee's tracks, that it would be required to pay the fixed annual charge of $22,500 per year, imposed upon and paid by appellee's other tenant lines. For the month of October, 1892, appellee sent to appellant a bill for the fixed rental for said month, making the amount thereof $1,875, that being the one-twelfth of the fixed rental of $22,500. This bill was paid in full by appellant. A similar bill was made for November, but the voucher sent in payment of it by appellant had a reduction, so that the payments for the two months of October and November would be on the basis of $13,000 per year. This appellee refused to accept, until it was finally arranged between the two companies that payment should be accepted temporarily on the basis of $13,000 per year, until appellant had opportunity to investigate its rights in the premises.

There was correspondence afterward, in which appellee insisted that appellant should not longer delay making a permanent arrangement, and in which appellant requested further time. The situation so continued until the notice was served, March 19, 1894.

The result of the notice was, that on April 20, 1894, appellant appeared before the master in chancery of Peoria

county and obtained a temporary injunction, restraining the appellant in accordance with the prayer of the bill. The bill of complaint thus presented, and on which the injunction was issued, avers the Genis contract as having been entered into between Genis and appellee company, but does not aver that such contract was ever adopted by the Terre Haute & Peoria Railroad Company, and does not in any manner aver or claim, that appellant is entitled to the use of appellee's property by virtue of that contract. An examination of this bill of complaint will show that the contract was set forth, and the payments of the Terre Haute & Peoria Railroad Company was referred to, merely as evidencing appellant's claim that $13,000 per year as a fixed charge is reasonable and sufficient. There is no averment in the bill in any way intimating that appellant claims the Genis contract to be in force, or that it is bound thereby, for the period thereof. The grounds for relief, presented by the bill, are that appellee, while organized as an ordinary railroad company, is, in truth, merely a union depot company, and hence appellant is entitled to the use of the former's tracks, provided a reasonable compensation is paid. It is averred repeatedly, that $13,000 per year is a reasonable charge, and that appellant is willing to pay whatever may be found fair and just, and the prayer is that appellee be restrained from excluding or attempting to exclude, complainant from the use, in common with others, of the union passenger and freight depots, and the necessary and proper approach thereto, " so long as the complainant pays and will secure the payment of a reasonable and just compensation for such use, right and privilege, as may be charged to and collected of other persons and corporations using and enjoying like rights and services in the said city of Peoria."

T. J. GOLDEN, attorney for appellant, contended that covenants against assignment or underletting are not favorably regarded by the courts and are construed liberally in favor of the lessees, and so as to prevent the restriction from extending beyond the express stipulations. Wood's

Landlord and Tenant, Sec. 324; Taylor's Landlord and Tenant, Secs. 402 and 403; Boyd v. Fraternity, etc., 16 App. 574; Bochover v. Post, 25 N. J. L. 285; Jackson v. Silvernail, 15 Johns. 279; Cooney v. Hays, 40 Vt. 478.

A breach of this covenant can only be taken advantage of by the lessee, and is easily waived by him. Crouch v. Wabash, etc., R. R. Co., 22 Mo. App. 315; Murray v. Harway, 56 N. Y. 337; Webster v. Nichols, 104 Ill. 160; Dougherty v. Mathews, 35 Mo. 520.

And where there is such a restriction against assignment, a license by the landlord to the tenant once given is a complete waiver of the restriction as to subsequent assignments. Murray v. Harway, 56 N. Y. 337.

A railroad company may be compelled by mandatory injunction to perform its obligations to the public. Vincent v. C. & A. R. R. Co., 49 Ill. 33.

Where a railway company had made arrangements with one W to carry passengers from its station to the town of K, and admitted his omnibus within its station grounds for that purpose, it was held that it could be compelled to admit M's omnibus also, who was engaged in carrying passengers to the town, no special circumstances being shown why the latter should be excluded. Marriott v. L. & S. W. R. Co., 1 Nev. & Mac. 47; Kalamazoo, etc., v. Hack & Bus Co., 84 Mich. 194; Cravens v. Rodgers, 101 Mo. 247.

A trespass irreparable in its character and of a continuing nature, may be restrained by a mandatory injunction, thus restoring things to their original condition. High on Injunctions, Sec. 478.

When necessary to protect the rights of the parties, or some of them, a mandatory injunction may be granted as interlocutory. Joyce on Injunctions, 433; Kerr on Injunctions, 232; Drewry on Injunctions, 260.

The primary object in the creation of railways is the interest of the public. P. & R. I. Ry. Co. v. Coal Valley Co., 68 Ill. 489.

Page, Wead & Puterbaugh, of counsel.

STEVENS, HORTON & ABBOTT, attorneys for appellee, contended that the appellant does not, in its bill of complaint, aver that the Terre Haute & Peoria Railroad Company adopted the Genis contract, or that such contract has been assigned to appellant. No right is claimed in the bill, under that contract. The ground for relief presented by the bill is that the defendant, though organized as a railroad company, is a union depot company, and hence, it is charged, should receive appellant's trains, and do other work required by it, so long as appellant will pay a reasonable compensation. The rule is that a complainant in chancery can not state his case one way in his bill, and recover on some different theory. He must recover, if at all, on the ground stated in the bill. Purdy v. Hall, 134 Ill. 298; Flinn v. Owen, 58 Ill. 111; Carmichael v. Reed, 45 Ill. 108; Fountain v. Fountain, 23 Ill. App. 529; Tracy v. Rogers, 69 Ill. 662.

If the Genis contract was the ground of relief set up in the bill, still there could be no recovery, because the only evidence in the case in reference to the adoption of that contract by the Terre Haute & Peoria R. R. Co. is to the effect that it was not adopted, and because that contract provides that the " said party of the second part and his successors and assigns, as aforesaid, shall not assign, transfer or underlet the rights and privileges hereby granted, or any of them, without the consent of the said party of the first part expressed by resolution of its board of directors, approved by all the members of said board; nor shall it, he or they have the right, by any contract with any other railroad corporation, or the owner or owners of any railroad, to give to such corporation or owner, the right for its trains to pass over or use the railroad of the party of the first part." This clause, construed with the first paragraph of the contract, shows that this restriction binds the Terre Haute & Peoria R. R. Co., it being the purchaser of the property, and hence included in the words, " the party of the second part and his successors and assigns as aforesaid." The last named company was, therefore, expressly prohibited from assigning the contract or granting to appellant any of the rights or

privileges covered by it. An agreement of this character is not a lease, but is the grant of a mere license or easement, and is not assignable. Holliday v. Chicago Arc L. & P. Co., 55 Ill. App. 463; Kew v. Trainer, 150 Ill. 150; Kew v. Trainer 50 Ill. App. 629; Wiggins Ferry Co. v. O. & M. Ry., 94 Ill. 83.

·Appellant is not entitled to relief under the union depot act, because appellee is not incorporated under that act. It owns two lines of railroad extending to Pekin, has tracks leading to coal mines between Peoria and Pekin, has connections with industries stretching for several miles along the river, runs regular passenger and freight trains between Pekin and Peoria, and, in short, does a general railroad business. The union depot act provides for an entirely different kind of company, organized in a different manner, and for very limited purposes. Hurd's Statutes, Chap. 114, Secs. 1–3, 56–61.

Courts everywhere recognize the right and necessity of a railroad company to control its own property, which it can not do if other companies can use its tracks and terminal facilities as they see fit. Appellant can have no relief on this proposition, which is, indeed, its main and only contention, because appellee does not permit other companies to run their trains on its tracks and to use its terminal facilities except such companies enter into contracts satisfactory to appellee, and because appellee has the right to control and manage its own business. St. L., I. M. & S. Ry. v. So. Ex. Co., 117 U. S. 1; A., T. & S. F. R. R. v. D. & N. O. R. R., 110 U. S. 667; Ky. & I. Bridge Co. v. L. & N. R. R., 37 Fed. 567; I. C. R. R. v. C., B. & N. R. R., 122 Ill. 473; Oregon Short Line, etc., v. Northern Pacific, 51 Fed. 465; Port J., N. & N. Y. R. R. v. N. Y., L. E. & W. Ry., 132 N. Y. 439; Little Rock & M. R. Co. v. St. L., I. M. & S. Ry., 59 Fed. 400; Shelby R. R. v. L. C. & L. R., 82 Ky. 541; Oregon Short Line v. Northern Pacific, 61 Fed. 158; Penn. R. R. v. B. & O. R. R., 60 Md. 263.

MR. JUSTICE LACEY DELIVERED THE OPINION OF THE COURT.
We have examined the record in this cause carefully and given full attention to the printed and oral argument for the

appellant as well as the printed argument of the appellee and have carefully noted the points made by the counsel on either side.

The appellant insists that the court erred in its decision in not solving in its favor certain questions of law which it submitted, as follows, to-wit : First, it is claimed appellant is entitled to the benefit and subject to the burden of the Genis contract mentioned in the statement of this case, and that appellee was proceeding in violation of said contract, when restrained by the writ of injunction issued by the master in chancery.     Second, the appellee in its relation to the appellant was a *de facto* union depot corporation, and amenable to the union depot act against discriminations.     Third, the appellee, if not subject generally to the union depot act, is by reason of its actions and doing in the premises, within the spirit and policy of this State against extortion and discriminations.     We think the appellant has failed to make out its point as claiming any right under the Genis contract made by the receiver of the Midland Railway Company, while he was receiver, because under such contract the receiver, nor his successors or assigns, had any right to transfer or underlet the rights and privileges granted to him or any of them without the consent of appellee by resolution of its board of directors approved by all the members of the board.     Again, there is no allegation in the bill nor is there any proof that the Terre Haute & Peoria Railroad Company, the appellant, ever adopted the provisions of the contract, but by a temporary arrangement it was making use of the road and terminal facilities without reference to and outside of the contract; therefore we think that the Genis contract was not and could not be enforced without the sanction of the appellee in the manner provided in the Genis contract.

As to the second point of the appellant's argument, that the appellee, in its relation to the appellant, is a *de facto* union depot corporation, we think it can not be so regarded. The appellee was incorporated as a general railroad company to build, own and operate a line of railroads from Peoria, in Peoria county, to Pekin, in Tazewell county, Illi-

nois, and was not incorporated under the union depot act made expressly for the companies for a limited purpose, to wit, of constructing and establishing a union station for passenger or freight depots, or for both, in any city, town or place in this State, with the necessary offices and rooms convenient for the same. Hurd's Statutes, chapter 114, section 56.

It appears that the appellee company was much more than a union depot company, and had a large number of tracks and terminal facilities, including freight and passenger depots in the city of Peoria, which was a part of its railroad system. It did business of a general character by running daily trains each way from Pekin to Peoria. Its main track is eighteen miles long; it owns switch yards in Pekin and another in Tazewell county between Wesley City and the Illinois river, and its tracks reach various industries in the city of Peoria, extending along the river bank for the distance of three or four miles, and its principal business is not that of a mere union depot.

We are of the opinion, therefore, that the appellee is not amenable to the statute governing union depots. The appellee was not operating under the union depot act. Second point made by the appellant is not, therefore, well taken.

Nor is it, as contended for by appellant in its third point, by reason of its actions and doings, within the spirit and policy of the statute of this State against extortion and discriminations. We regard the appellee as being an independent corporation, not compellable by the court to make contracts with other railroad companies except under such terms as may be agreed upon. It is as independent in that particular as any other railroad corporation could be, and the Circuit Court had no jurisdiction or power to compel the appellee to make a contract with the appellant with regard to the use of its terminal facilities.

The decree of the court below is therefore affirmed.