TERRE HAUTE & I. R. CO. v. PEORIA & P. U. R. CO.

(Circuit Court, N. D. Illinois, S. D.   November 8, 1897.)

1. INJUNCTION—JURISDICTION—STAYING ACTION IN STATE COURT.
   Rev. St. § 720, which declares that federal courts shall not by injunction stay proceedings in state courts except in bankruptcy matters, does not deprive a federal court of jurisdiction to enjoin proceedings in a state court as ancillary to granting relief in a case in which the federal court has jurisdiction.

2. SAME—DEFENSE COGNIZABLE AT LAW.
   A federal court of equity will not stay an action at law in a state court on account of a defense which may possibly be cognizable at law, until the court of law has refused to consider such defense.

Suit in equity by the Terre Haute & Indianapolis Railroad Company against the Peoria & Pekin Union Railroad Company. The cause was heard on a motion for an injunction to stay certain proceedings in a state court.

J. G. Williams, W. J. Calhoun, and W. J. Lyford, for complainant.
Stevens, Horton & Abbott, for defendant.

GROSSCUP, District Judge.   The motion is for an injunction restraining the defendant from proceeding at law in the circuit court of Peoria county upon a certain bond made by the complainant and its sureties to the defendant.   The facts essential to the disposition of the motion may be stated as follows:   The complainant, the Terre Haute & Indianapolis Railroad Company, is lessee of a railroad organized under the laws of Illinois, and known as the Terre Haute & Peoria Railroad Company.   This last company purchased its road at a receiver's sale in 1887, the road before that time being the property of the Illinois & Midland Railroad Company, running from a point on the Toledo & Western Railroad, four miles east of Peoria, to a point near Terre Haute.   During the period that the Illinois & Midland Railroad Company was in the hands of the court, its receiver, Louis Genis, made a contract with the Peoria & Pekin Union Railroad Company, the defendant here, whereby the Midland road was given the use of terminal facilities in and near Peoria at a rental of $13,000 per year.   In view of the contemplated sale of the road on the then pending foreclosure proceedings, in aid of which the receiver had been appointed, the contract provided that the purchaser or the owner of the property might, at the termination of the receivership, extend the contract for the full period of 50 years from February 1, 1881.   The complainant, as lessee of the Terre Haute & Peoria Railroad Company, purchaser at the foreclosure sale, went into possession of the road some time in 1892, and in connection therewith used the defendant's tracks and terminal facilities.   Differences having arisen between the two companies over the interpretation of the contract, the defendant claimed rental at the rate of $22,000 per year, —a sum obtained from certain other roads using the terminal,— while the complainant offered and paid at the rate of $13,000 per year.   It was understood that the lesser amount should be currently paid, but that its payment and acceptance should not prejudice

the rights of either party in any adjudication upon the controversy between them. In 1894 the defendant served notice upon the complainant that, unless the rentals were to be paid at the rate of $22,500 per year from the date of the company's possession, in 1892, the complainant would be excluded from the use of the tracks and the terminal facilities; whereupon the complainant filed its bill in equity in the circuit court of Peoria county for an injunction restraining the defendant from proceeding to execute its threats of exclusion. A temporary restraining order having been made ex parte, the same was, upon the motion and full hearing, dissolved, but the court, upon application of the complainant, under the practice provided by the statutes of this state, continued the injunction in force pending the appeal, upon the complainant's executing its bond, with surety, for the payment of all back rentals at the rate of $22,500 per year, in case its judgment was affirmed. This bond also contained the usual provisions for the payment of all damages. The judgment was affirmed by the appellate court (61 Ill. App. 405), whereupon, upon application to a justice of the supreme court, the injunction was again continued in force, pending an appeal, upon the execution of a bond of like tenor as the first. On the hearing in the supreme court the judgment of the circuit court, together with that of the appellate court, was affirmed. The successful party, the Peoria & Pekin Union Railroad Company, thereupon began suits on each of these stay bonds in the circuit court of Peoria county, and it is to restrain the further prosecution of these suits that the present bill is filed.

It seems that the bill for an injunction filed in the circuit court of Peoria county, and reviewed by the appellate and supreme courts, was framed upon the theory that the Peoria & Pekin Union Railroad Company was a union depot company, under the laws of Illinois. In such event, the Indianapolis & Terre Haute Railroad Company would, independently of any rights obtained under the contract between the receiver, Genis, and the Peoria & Pekin Union Railroad Company, have been entitled to the use of the terminals at a reasonable rental. Each of the state courts through which the case passed, however, found that the Peoria & Pekin Union Railroad Company was not a union depot company under the laws of Illinois, and it was upon this finding that the original injunction was dissolved, and the contention of the Indianapolis & Terre Haute Railroad Company defeated. But the supreme court of the state, in its written opinion, took occasion to refer to the contract between Genis and the Peoria & Pekin Railroad Company, and the relation of the Indianapolis & Terre Haute Railroad Company, as successor to Genis, under such contract, and in so doing intimated, at least, that the Indianapolis & Terre Haute Railroad Company was entitled, under such contract, to the use of the tracks and terminal facilities at the rate of $13,000 per year. It is averred in the bill before me that the Indianapolis & Terre Haute Railroad Company, in the bill originally filed in the state court, predicated its right to the use of these terminals at the rate of $13,000 per year upon the contract, as well as upon the law relating to the union depot companies. The su-

preme court, however, could not have so understood the bill, for it could not, on such a case, in holding the views expressed in its opinion respecting the rights of the Indianapolis & Terre Haute Railroad Company under the contract, have affirmed the judgments below. It is insisted by the Peoria & Pekin Railroad Company, on the contrary, that the Indianapolis & Terre Haute Railroad Company did not, in fact, and was unwilling to, base any part of its case upon the Genis contract, because by so doing it would have bound itself to the use of the terminals at the rental stated for the full term of 50 years,—an obligation it did not wish to assume in view of contemplated terminals of its own within the city. Whatever may have been the fact in that respect, the Indianapolis & Terre Haute Railroad Company was, in fact, defeated, and is now defendant to two suits at law as the result of such defeat. Whether the Peoria & Pekin Union Railroad Company ought to recover the full penalty within the bonds, namely, rentals at the rate of $22,500 per year since 1892, notwithstanding the expression of the supreme court that the Genis contract, with its $13,000 per year rental, was binding upon the parties, is one question that must—either in the court in which the suit upon the bond is now pending, or in some other court—ultimately be determined.

Preliminary to this inquiry, however, is the question whether this court will entertain a motion to enjoin the defendant from prosecuting its suit upon the bond in the state court. Section 720, Rev. St. U. S., provides that the writ of injunction shall not be granted by any court of the United States to stay proceedings in any state court except in case where such injunction may be authorized by any proceeding in bankruptcy. The literal application of this statute to the case before the court would, of course, forbid the issuance of the injunction asked.

The constitution of the United States (article 3, § 2) provides that the judicial power of the courts of the United States shall extend to all cases in law and in equity arising under the constitution, the laws of the United States, treaties, or between citizens of different states. The statutes of the United States have, ever since the original judiciary act, provided that the circuit courts shall have original cognizance, concurrent with the courts of the several states, of all suits of a civil nature at common law or in equity arising under the constitution or laws of the United States, or in which there shall be controversies between citizens of different states. Injunctions to restrain proceedings in a state court are frequently an incident to a case to which the constitutional and statutory power of the United States courts is thus extended. An action, for instance, to annul a judgment at law obtained by fraud is a distinct case in equity, and can, therefore, be brought within the jurisdiction of the federal circuit courts, if proper diversity of citizenship exists; but such an action may carry with it, as one of its imperative necessities, the right to restrain the state court from issuance of an execution and the collection of the judgment debt; otherwise the possible decree to follow might be made ineffectual in advance. To take this injunctive

82 F.—60

right away would be to cut down, in its most material aspect, the substance of the court's jurisdiction. The injunctive right withdrawn, the whole case—that is, the case with its remedies—is no longer within the power of the court. Such a case was Marshall v. Holmes, 141 U. S. 589, 12 Sup. Ct. 62. That action was begun originally in the federal court, upon the ground that such judgment had been obtained by the fraud of one of the parties in forging the plaintiff's signature to a paper, on the strength of which alone the judgment was obtained. The injunction was issued in aid of the main purposes of the suit, restraining the judgment creditor from issuing an execution upon such judgment pending the final decree. Another illustration is found in the case of Dietzsch v. Huidekoper, 103 U. S. 494. That case was an action of replevin, brought originally in the state court, then removed to the federal court, and judgment rendered therein in favor of the plaintiff. In the state court, however, such right of removal was challenged, and the case proceeded there, and a judgment was entered against the plaintiff. Of course, if the state court had jurisdiction, the plaintiff was, on this judgment of right of property, liable to the defendant upon the replevin bond; and in fact such action was brought in the state court. The successful party in the federal court responded by a bill, filed in that court, seeking to enjoin the further prosecution of the bond in the state court. The injunction was issued, and subsequently sustained in the supreme court.

The removal statutes have, in substance, from the original judiciary act to the present time, provided that any suit of a civil nature at law or in equity, of which the circuit courts of the United States are given jurisdiction, shall be removable. It seems plain that, if the federal court cannot protect its jurisdiction by restraining all proceedings in the state court destructive thereof, the whole case is not, in fact, removed. Indeed, had not the right of such injunction upon state proceedings been sustained in Dietzsch v. Huidekoper, the federal court would, by the removal, have obtained nothing but the shell of the case, while its substance—the real power affecting the interests of the parties—would have remained in the state court.

These statutes, conferring jurisdiction in all cases arising in law or in equity, where certain conditions exist, were not intended to confer merely fractional jurisdiction. The right of the federal court to take cognizance of the controversies arising in such cases, with all the remedies usually applied in law and in equity, was clearly contemplated. Section 720 could never have been intended to trench upon this grant of jurisdictional domain. Such interpretation would imply an intention on the part of congress to repeal a portion of the power expressly given to the courts, both by the constitution and the judiciary act. In their literal scope, the constitution and statutes conferring jurisdiction, and this section 720, are in conflict, and to the extent of such conflict the legal effect of the latter statute must be narrowed down. The cases cited, and a line of cases in the supreme court of the United States, of which they are a development, clearly show that this is the interpretation put upon these two apparently inconsistent lines of legislation.

But the jurisdiction of the federal circuit court is extended only to distinct cases in law or in equity, where the stated condition prevails. Power is not thereby conferred to take jurisdiction of causes pending in the state court, or phases of such causes, such as proceedings tantamount to the common-law practice of moving to set aside a judgment for irregularities, or tantamount to a writ of error or bill of review. All such causes, however independently instituted, are, in their nature, merely parts of the cause to which they are related. The courts of the United States cannot establish a right to review proceedings of the state courts by any such assumption of jurisdiction. The case over which the courts of the United States can obtain jurisdiction, and, with it, carry the right of injunction,—other conditions precedent existing,—must be a distinct and separate cause of action, as distinguished from a merely ancillary action. The action in the state court sought to be stayed by the bill under consideration is upon two bonds of a supersedeas character. Whether the defense, the equitable consideration, thrust into the relations of these two railroad companies by the dicta of the supreme court opinion respecting the effect of the contract, can be interposed as a defense in these suits at law, I am not prepared to say. If the court at law has no power to hear such equitable defense, it may be that a court of equity will have jurisdiction to correct such shortcomings of the court of law. Such a cause may constitute a distinct case in equity, a case equipped with the necessary powers of injunction against the execution of a judgment thus rendered against the right, cognizable in the federal court. Until, however, the state court refuses to hear this defense, I cannot assume that the matter thus set up is not involved in the controversies before the state courts. I do not know what view the court may take of the nature of the bonds. It may hold these provisions to be in the nature of damages only, and therefore defeasible, on a showing that in fact, considering the contract between the parties, there was no damage. The motion for an injunction will be overruled, with leave to renew at any date.