## Terre Haute & Indianapolis R. R. Co. et al. v. Peoria & P. U. Ry. Co.

1. PLEADING—*Plea of General Performance—Does Not Answer an Assignment of a Particular Breach.*—In an action on a bond given for the purpose of continuing an injunction in force pending an appeal, a plea of general performance is not a good answer to an assignment of a particular breach.

2. SAME—*Where the Plea of Non Damnificatus is Insufficient.*—Where the condition of the bond stipulates for the performance of a particular act, performance of that act must be averred; the plea of *non damnificatus* is not sufficient.

3. SAME—*Nil Debet in Actions upon Bonds.*—A plea of *nil debet* is not a good plea in an action upon a bond where there are no common counts in the declaration.

4. ESTOPPEL—*By Recitals in a Bond.*—Where an obligor has voluntarily given the undertaking and delayed the enforcement of the decree, a plea of lack of jurisdiction in the court does not present a valid defense to an action upon the bond. In such cases the obligees are estopped from denying that it is a valid obligation.

5. PLEAS—*Which Amount to a Demurrer.*—A plea in bar, the legal effect of which is to admit the facts alleged and deny the legal conclusion drawn therefrom in the declaration is insufficient, as that is the office of a demurrer.

6. INJUNCTION BONDS—*Power to Fix Conditions of.*—The conditions of an injunction bond are fixed by statute, only in the case of enjoining

the collection of a judgment. In all other cases the party must give bond with such conditions as the court may require, and where an application continuing an injunction in force, pending an appeal from a decree dissolving the same, is granted, the court may require such further bond as it deems equitable.

7. APPEAL BONDS—*Power to Fix Conditions.*—On an appeal from a judgment or decree, other than a money judgment or decree, the court can fix the conditions of the bond with reference to the character of the judgment or decree appealed from.

8. UNION DEPOT COMPANIES—*The Peoria and Pekin Union Railroad.*—The Peoria and Pekin Union Railroad Company is not a union depot company, and is not bound by the statutes regulating the charges of union depot companies, or bound to let other railroads use its tracks and depots upon any terms.

9. VOLUNTARY OBLIGATIONS—*What are, etc.*—A bond given for the purpose of continuing an injunction in force, pending an appeal, is treated as a voluntary obligation in this State, and the party entering into it is estopped from denying that he is liable to the extent that its words bind him when strictly construed.

10. ADJUDICATION—*Can Not be by Piecemeal.*—A party can not try a cause by parts, in different proceedings; he must bring his whole case before the court, and have it disposed of in one proceeding. So when a complainant presents his cause of action to the court he must bring forward and urge all the reasons which then exist, for the support of it. The controversy can not afterward be re-opened to hear additional reasons in support of it which then existed and were within the knowledge of the party.

11. RES ADJUDICATA—*What it Embraces.*—The principle of *res adjudicata* embraces not only what was actually determined in the former case but also extends to all other matters properly involved, and which might have been raised and determined in it. So a complainant is bound to bring forward every objection known to exist to the validity of a tax, and if he fails to do so he can not urge it in a subsequent suit.

12. SAME—*Litigation Must Have an End.*—Litigation must have a termination, and when a matter has been in issue, the parties before the court, and opportunity afforded to assert their rights, they must be held concluded from afterward litigating them into another proceeding.

13. SAME—*The Rule Stated.*—Where a given matter becomes the subject of litigation and adjudication by a court of competent jurisdiction, the law requires the parties to bring forward their whole cause, and will not, except under special circumstances, permit them to open the same subject to again litigate a matter which might have been brought forward as a part of the subject in contest, but was not, because the parties from negligence, inadvertence, or even accident, omitted a part of their case.

14. DECREE—*When Conclusive as Estoppel.*—A final decree in chancery is as conclusive as a judgment at law, and is available as an estoppel, whether the second action involving the same question is at law or in equity.

T. H. & I. R. R. Co. v. P. & P. U. Ry. Co.

**Debt,** on a bond continuing an injunction in force, pending an appeal. Trial in the Circuit Court of Peoria County; the Hon. THOMAS M. SHAW, Judge, presiding. Verdict and judgment for plaintiff; error by defendant. Heard in this court at the December term, 1898. Affirmed. Opinion filed April 11, 1899.

T. J. GOLDEN, PAGE, WEAD & Ross and JOHN G. WILLIAMS, attorneys for plaintiffs in error, contended that a statutory undertaking, beyond what is required by the statute is, to that extent, without consideration and inoperative. Lambert v. Haskell, 80 Cal. 611; Menken v. Frank, 57 Miss. 732; Kountze v. Omaha Hotel Co., 107 U. S. 378; Stevens v. John Matthews, 6 Vt. 269; Court of Insolvency v. Meldon, 69 Vt. 510; Tomlin v. Green, 39 Ill. 225.

An injunction bond is not a voluntary bond, good at common law. Weaver et al. v. Poyer et al., 79 Ill. 417; Hanley v. Wallace, 3 B. Mon. (Ky.) 184; Colcord et al. v. Sylvester et al., 66 Ill. 540.

STEVENS, HORTON & ABBOTT, attorneys for defendant in error.

The Circuit Court did not err in sustaining the demurrer to defendant's pleas or in refusing to allow filed the additional plea.

The said second plea averred a general performance. The declaration averred the breach of a covenant to pay $1,875 per month. A plea of general performance was not sufficient to the assignment of a breach of that special covenant. Mix v. The People, etc., 86 Ill. 329; People v. McHatton, 2 Gilm. 731; Mix v. The People, 92 Ill. 549.

The third plea was *non damnificatus*. It was not a good plea to a declaration charging failure to perform a special covenant. The rule is that where the bond contains an affirmative covenant to do a specific thing, liability must be adjudged, even if no loss results from a non-performance, and *non damnificatus* is not a good plea. The declaration here charged the breach of a covenant to pay a specific sum of money. Sears v. Nagler, 18 Ill. App. 547; Ency. of Pleading & Practice, Vol. 3, page 663; Holmes v. Rhodes, 1

B. & P. 638; Stephen's Pleading, p. 322; American Building Association v. Booth, 17 R. I. 736; Everett v. State, 28 Md. 190.

The fifth plea was *nil debet.* It was not a good plea to an action of debt on a bond. Mix v. The People, 92 Ill. 549; Price v. Farrar, 5 Ill. App. 536; Kilgour v. Drainage Commissioners, 111 Ill. 342; Caldwell v. Richmond, 64 Ill. 30; Ency. of Pleading & Practice, Vol. 3, page 664.

The sixth and seventh pleas are substantially alike. They are pleas of *non damnificatus.* The declaration avers the breach of a covenant to pay $1,875 per month. The consideration for that covenant was the continuance in force of an injunction. The continuance of the injunction is admitted in the bond. These pleas set out certain facts and then averred thereby no damage was sustained. The facts did not go to the consideration, since the consideration was the continuance of the injunction; and pleas of *non damnificatus* could not be pleaded. See authorities above. Sears v. Nagler, 18 Ill. App. 547.

The court properly refused to allow the plea denying the continuance of the injunction to be filed, because a plea of no consideration was already filed, and because the defendants in that suit were estopped to deny the continuance of the injunction. The bond recited it. Fowler v. Scott, 11 Ark. 675, 686; Spelling on Extraordinary Relief, Sec. 936; Person v. Thornton, 86 Ala. 308, 5 So. Rep. 470; LeStrange v. State, 58 Md. 26; Mix v. The People, 86 Ill. 329; George v. Bischoff, 68 Ill. 236; Herrick v. Swartwout, 72 Ill. 340; Arnott v. Friel, 50 Ill. 174.

Similar bonds have been upheld by our Supreme Court. It has been held that an injunction bond in a suit to restrain the collection of a note, may be conditioned for the payment of the note. In the chancery case, the issue was defendant's right to require a payment of certain rental. That issue was decided in its favor before the bond was given. It was, therefore, a proper exercise of discretion for the court to require a covenant for the payment of the rental, in case the decree was affirmed. Billings v. Sprague, 49 Ill. 509; Barnes

v. Brookman, 107 Ill. 317; Walker v. Pritchard, 135 Ill. 103.

These cases hold that injunction bonds are voluntary obligations. The bond given on the appeal from the Circuit Court was also an appeal bond. Such bonds are held to be voluntary obligations. Mix v. The People, 86 Ill. 329; George v. Bischoff, 68 Ill. 236.

It is not only held that a party who obtains an injunction is estopped to deny the authority of the court by which granted, but also that where one obtains a supersedeas by giving a certain bond, the party is estopped to deny the validity of the bond. Hence, having received the benefit, plaintiffs in error are estopped to deny the validity of the bonds in suit. They are at least binding as common law obligations. Hanna v. McKenzie, 5 B. Mon. (Ky.) 314; Mix v. The People, 86 Ill. 329; Courson v. Browning, 78 Ill. 208; George v. Bischoff, 68 Ill. 236; Pritchett v. The People, 1 Gil. 525.

Plaintiffs in error are estopped, for still another reason, from setting up the Genis contract as a defense to the suit on the bonds. When the Terre Haute & Indianapolis Railroad Company commenced its original chancery suit, and when the bonds were given, it had full knowledge of all the facts averred in the pleas to which demurrer was sustained. The pleas do not deny the knowledge. It was the duty, therefore, of that company to present to the court in its bill, whatever right it claimed under that contract, and, having not merely neglected, but purposely omitted to do so, it is estopped from claiming under that contract. The complainant, having elected its course, must abide by it. Van Fleet's Former Adjudication, Vol. 1, page 310; Bank of U. S. v. Schultz, 3 Ohio, 61; McMicken v. Morgan, 9 La. Ann. 208; Armstead v. Blickman, 51 Ill. App. 470; People v. Rickert, 159 Ill. 496; Rogers v. Higgins, 57 Ill. 244; Hamilton v. Quimby, 46 Ill. 90; Ruegger v. I. & St. L. R. R., 103 Ill. 449.

And especially is that true when applied to the bonds given in and as part of the original case. Plaintiffs in error

can not retry the chancery suit in the suit on the bonds.
Fowler v. Scott, 11 Ark. 675, 686; McAllister v. Clark, 86
Ill. 236; High on Injunctions, 3d Ed., Secs. 1637, 1641, 1652;
Sipe v. Holliday, 62 Ind. 4.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of
the court.

On the 12th day of December, 1894, in the Circuit Court
of Peoria County, in a chancery case pending therein, in
which the Terre Haute & Indianapolis Railroad Company
was complainant and the Peoria & Pekin Union Railway
Company was defendant (which companies we will for
brevity here call the Indianapolis company and the Pekin
company), a final decree was entered, dissolving an injunc-
tion which had theretofore been issued in said cause, finding
the equities with the defendant, and that complainant was
not entitled to the relief prayed for, and dismissing the bill
of complaint. Complainant then prayed an appeal to this
court and for an order continuing in force said injunction
pending said appeal. The court thereupon entered the fol-
lowing order:

" It is hereby ordered and decreed that said appeal
be allowed and said injunction is ordered continued in
force pending said appeal, upon complainant's filing a
bond within twenty-one days from this date, in the sum of
$20,000, conditioned that said complainant shall prosecute
said appeal with effect, and pay defendant all costs of suit
rendered, and to be rendered, against it by said court, and
shall moreover pay to defendant all damages sustained by
it by the continuance of said injunction, and also the sum
of $1,875 per month for each month from October 1, 1892,
to the present time, and each month during the pendency of
said appeal, less such credits as complainant may be entitled
to by reason of payments made on said sum (the said sum of
$1,875 per month being the rental demanded of plaintiff as
a fixed charge, as in defendant's answer stated); said condi-
tions and requirements of said bond to be in full force and
effect if the decree herein appealed from shall be affirmed
in said Appellate Court, otherwise to be null and void."

In compliance with said order, complainant filed in said
court its bond with sureties. The condition of the bond,

after reciting the decree and prayer and order of appeal and order continuing the injunction in force pending said appeal, was as follows:

"Now, if said Terre Haute & Indianapolis Railroad Company shall duly prosecute said appeal, and shall moreover pay all costs rendered, and to be rendered, against it, and shall pay to said Peoria & Pekin Union Railway Co. all damages sustained by it by the continuance in force of said injunction, and shall pay to said Peoria & Pekin Union Railway Company the sum of $1,875 per month for each month from October 1, 1892, to the date of filing in said Circuit Court, of the decree dissolving said injunction, and for each and every month from said last named date during the pendency of said appeal, less such credits as said Terre Haute & Indianapolis Railroad Co. may be entitled to by reason of payments made on said sum (the said sum of $1,875 per month referred to being the rental demanded of complainant as a fixed charge, as in defendant's answer stated) in case the decree appealed from shall be affirmed in said Appellate Court, then the above obligation to be null and void, otherwise to remain in full force and virtue."

On December 10, 1895, the Appellate Court affirmed the decree. Thereafter this suit was brought upon said bond. Certain common counts of the declaration as filed were withdrawn and the declaration was reduced to the amended first count. It set out the decree, the prayer and order for an appeal and continuing the injunction in force, the bond given under said order, the affirmance of said decree by the Appellate Court, and averred that said Indianapolis company continued to use the property of the plaintiff in said suit involved during all said time and has not paid the plaintiff said sum of $1,875 per month for each month from October 1, 1892, to the date of said decree, and for each month thereafter during the pendency of said appeal, as in said writing obligatory provided, or any part thereof, except the sum of $1,083.33 per month; that except the said last sum there are no credits to which the said Indianapolis company is entitled by reason of payments made on said sum of $1,875, to be paid per month as in said writing obligatory provided; nor has it paid the costs last

aforesaid, or the damages sustained by plaintiff by the continuance in force of said injunction, or any part of the same, whereby action hath accrued, etc.   All plaintiff offered proof concerning and sought to recover under said declaration was $1,875 per month for said time, less $1,083.33 per month paid thereon, so that no question is involved concerning any other damages except said specific sum per month, provided for in the bond.

Defendant filed eight pleas.   The first was *non est factum*, the fourth *nul tiel corporation*, and the eighth want of consideration, and upon these pleas issues of fact were joined. The second plea was that the Indianapolis company did, at all times after making said writing obligatory, keep and perform all the valid and lawful matters and things in said condition specified on its part to be kept and performed. The third plea was *non damnificatus*.   The fifth plea was *nil debet*.   The sixth plea set up certain transactions hereinafter more fully stated, which occurred prior to the filing of said bill for an injunction, and averred that by reason thereof plaintiff had not then, nor ever since October 1, 1892, the right to charge the Indianapolis company more than $1,083.33 per month, and that it had paid said sum, wherefore plaintiff had sustained no damages by reason of its failure to pay said $1,875 per month according to the terms of said writing obligatory, and ought not to recover said last named sum.   The seventh plea set up said facts and the Genis contract hereinafter referred to, and averred that said contract was in force between said plaintiff and said Indianapolis company, and that said plaintiff had no right to any greater sum than the $1,083.33 per month stipulated in the Genis contract.   It also stated the filing of the bill and answer in said chancery suit, the hearing and the decree, the prayer and order of appeal and continuing in force of said injunction, and the giving of the bond in suit in compliance therewith; that it never owed plaintiff $1,875 per month; that a just and reasonable compensation was less than $1,083.33 per month, which it had paid; that said Indianapolis company entered into said writing obligatory

only because it could not otherwise complete said appeal, and that the order of the Circuit Court requiring it to give bond for the payment of $1,875 per month was without legal authority and was null and void; that on a subsequent appeal from said decision of the Appellate Court the Supreme Court of this State adjudged said Genis contract in full force and effect, and that the Indianapolis company was not legally obliged to pay any greater sum than $1,083.33 per month, which sum it had paid; and that it had performed all the other duties of said obligation. Demurrers were sustained to the second, third, fifth, sixth and seventh pleas, and defendants elected to abide by said pleas. On the day of the trial defendants asked leave to file two additional pleas. The first additional plea denied that the injunction was continued in force during the pendency of said appeal or any part of said time. This the court refused leave to file. The court gave leave to file the second additional plea. It set out at length the allegations of the bill of complaint in said chancery cause, the fact of answer and of decree dismissing the bill and dissolving the injunction, and averred that by reason of the facts so stated the order allowing the appeal and continuing in force the injunction and the bond mentioned in the declaration were each wholly without the jurisdiction of the Circuit Court and null and void. A demurrer to this plea was sustained. There was a jury trial, proof that only $1,083.33 per month had been paid upon the rentals referred to in said order and bond, and that the difference between that sum and $1,875 per month from October 1, 1892, to December 1, 1895, amounted to $30,083.46, no part of which had been paid. There was a verdict and judgment in debt, awarding damages in the sum of $20,000, the full penalty of the bond. This is a writ of error prosecuted by the principal and sureties in said bond to reverse said judgment.

The breach assigned was a failure to pay $1,875 per month. The second plea, general performance, did not answer that breach, and was therefore bad. (Mix v. The People, 86 Ill. 329.) Moreover, it only averred performance

of the valid and lawful matters in the conditions of the bond specified, without indicating what conditions the defendants considered valid and lawful and had performed. The third plea, *non damnificatus*, was insufficient where, as here, the condition is to pay a specified sum of money. Where the condition stipulates for the performance of a particular act, performance of that act must be averred. (Coombs v. Newlon, 4 Blackf. 120; Sears v. Nagler, 18 Ill. App. 547.) The fifth plea, *nil debet*, was applicable only to the common counts (Mix v. The People, 92 Ill. 549), and they were withdrawn before the plea was filed. The second additional plea denying the jurisdiction of the court, the validity of the order requiring the bond and the bond given thereunder, did not deny that by virtue of said bond the injunction was continued in force and complainant in said chancery suit given the full benefit of said order and bond. Where an obligor has voluntarily given the undertaking and delayed the enforcement of the decree, lack of jurisdiction in the court does not present a valid defense to an action upon the bond. In such cases the obligees are estopped from denying that it is a valid obligation. (High on Injunctions, 1st Ed., Sec. 961; Walton v. Develing, 61 Ill. 201; Mix v. The People, 86 Ill. 329.) The court therefore ruled correctly in sustaining the demurrer to the second, third and fifth pleas and to the second additional plea. The court did not err in refusing leave to file the first additional plea, which denied that the injunction was continued in force during the pendency of said appeal. The legal effect of the order of appeal and of giving the bond thereunder was to continue the injunction in force. The plea did not deny the making of said order nor the giving of the bond, and without denying these allegations defendants could not be heard to question their necessary legal effect by plea. That would be admitting the facts alleged and denying the legal conclusion drawn therefrom in the declaration, and that is the office of a demurrer. Moreover, issue had already been joined upon a plea of want of consideration. This disposes of the action of the court upon all the pleas

except the sixth and seventh, and our conclusion that the demurrer to those pleas was correctly sustained will appear from what we hereafter say of the merits of the case.

Plaintiff's proof made a *prima facie* case. Defendants offered considerable documentary evidence, set out in the bill of exceptions, to which the court sustained objections. We shall consider both the evidence admitted and that rejected in determining whether either established a defense. From this evidence the material facts are as follows :

The Pekin company, plaintiff below, is a railroad company owning a railroad extending from Peoria to Pekin, with many side tracks, with depots and bridges, and with switches reaching various industries in Peoria. It not only operates trains of its own, but lets the use of its tracks and terminal facilities to other railroad companies which wish to reach Peoria and its shipping business, but have no tracks or rights of way thereto; and it also does switching for such railroad companies with its own engines and crews. In 1881 the Illinois Midland Railroad Company was in the hands of Louis Genis, receiver, and he, as such receiver, made a contract with the Pekin company for the use of said tracks and terminals for the period of said receivership of Genis and his successors, as receiver, with the right of the Midland company or the purchaser of said Midland road at the termination of the receivership to extend the lease for fifty years from February 1, 1881. The consideration to be paid for said privileges was certain uniform rates named for specified items of service, such as switching and the like, and also a further and fixed charge of $13,000 per year in equal monthly installments of $1,083.33 per month. There were provisions by which any purchaser of the Midland would have the option to accept or reject that contract, and also provisions restricting the right of Genis and his successors to assign the contract or any rights thereunder to any other railroad corporation, and requiring therefor the consent of the Pekin company and every one of its directors. In 1887 the Terre Haute & Peoria Railroad Company became the owner of the Midland road by pur-

chase at a sale under judicial proceedings. Thereafter said Terre Haute & Peoria Railroad Company used and paid for the facilities of the Pekin company as Genis had previously done. There was never any determination by the Terre Haute & Peoria Railroad Company to adopt and be bound by the Genis contract, nor any consent by the Pekin company and its directors that said road should have the benefit of the Genis contract, except as such adoption and consent were indicated by the use of said terminals, and the payment and receipt of the rent therefor at the rate fixed by the Genis contract. Indeed, the Terre Haute & Peoria Railroad Company notified the superintendent of the Pekin company that it sought a modification of the Genis contract.

On October 1, 1892, the Indianapolis company took possession of the Terre Haute & Peoria Railroad by virtue of a contract of that date between said companies, and thereafter operated said railroad in connection with its own lines by it previously operated. The Indianapolis company had more extended lines of road than Genis operated as receiver of the Midland when the contract between him and the Pekin company was made, and it had greater use for the tracks and facilities of the Pekin company. Before October 1, 1892, and before the Indianapolis company took possession of the property of the Terre Haute & Peoria Railroad Company, and before the date of the contract between the two last named companies, the Indianapolis company was notified by the Pekin company that if it desired to use the terminals of the Pekin company the fixed charge therefor would be $22,500 per year, in equal installments of $1,875 per month; and the Terre Haute & Peoria Railroad Company was also notified at the same time that it would not be permitted to use the terminals of the Pekin company after October 1, 1892, under the former arrangement. At the end of the month of October, 1892, the Pekin company sent the Indianapolis company a bill which included said fixed charge at $1,875 for that month, and the bill was paid. At the end of the next month a like bill was

sent, but the Indianapolis company did not pay it in full. Instead it sent a voucher for a sum which would cover rent for both months at $1,083.33 per month, less the sum paid at the end of October. The Pekin company refused to receive this voucher. It was finally arranged between the two companies that payment should be made temporarily at $1,083.33 per month and that the Pekin company should receive it as upon account till the Indianapolis company could investigate its rights in the premises, but with the understanding that the Pekin company claimed and would insist upon the $1,875 per month, and that the Indianapolis company did not admit a liability therefor. Correspondence between the parties followed, but no conclusion was reached. On March 19, 1894, the Pekin company notified the Indianapolis company in writing that on April 20, 1894, it would be excluded from the use of said tracks and terminals unless it paid the back rent from October 1, 1892, at $1,875 per month, and made a satisfactory contract for the further use of the property. Thereupon on April 20, 1894, the Indianapolis company filed its bill for an injunction already referred to, and obtained a temporary injunction from a master. Said bill, in detailing the facts, included the execution of the Genis contract and made it an exhibit, but it did not aver that either the Terre Haute & Peoria Railroad Company or the Indianapolis company had ever elected to adopt and be bound by said Genis contract. It based its right to an injunction upon the position that the Pekin company was not a railroad company, but was a union depot company, and bound by the statutes of the State regulating the charges of union depot companies; that the Pekin company was unjustly and unlawfully discriminating against the Indianapolis company and charging it more than it charged other companies, and more than the facilities furnished were reasonably worth; and that said facilities were worth no more than $13,000 per annum. Its prayer was for a final decree restraining the Pekin company from excluding the Indianapolis company from its terminal rights and facilities "so long as complain-

ant pays, and will secure payment, of a reasonable and just compensation for such use, rights and privileges as may be charged to and collected of other persons and corporations using and enjoying like rights and services in said city of Peoria," and for a temporary injunction of like tenor pending the suit.

Upon the hearing of a motion to dissolve, after answer, the court dissolved the injunction. The parties then submitted the cause at once for final hearing upon the proofs heard on the motion to dissolve, and a decree was entered as before recited finding the equities with defendant, and dissolving the injunction and dismissing the bill. Then followed the prayer and order granting an appeal and continuing the injunction in force under the bond here in suit. That decree was affirmed in T. H. & I. R. R. Co. v. P. & P. U. Ry. Co., 61 Ill. App. 405, and 167 Ill. 296. The provisions of said Genis contract set out in the statement of that case by the Supreme Court in 167 Ill., on pages 297 to 299, show it was clearly a debatable question whether the Indianapolis company could avail itself of the Genis contract without the assent of the Pekin company and each of its directors. If the Indianapolis company had the right to adopt the Genis contract, there is nothing to show that prior to the filing of the pleas in this case it ever claimed, in any correspondence or pleading, that it was entitled to the benefits of and bound by the provisions of that contract. Contracts must be of mutual obligation if binding at all, and if the Indianapolis company was entitled to the benefits of the Genis contract, it could be compelled to pay the rental and the other charges therein specified for fifty years from February 1, 1881, and it might not at that time have seemed to be for its advantage to be bound to that extent. Its position in its bill of complaint was distinctly antagonistic to the Genis contract, and virtually a repudiation thereof. It set up as its only ground for relief against exclusion from the terminals of the Pekin company that the latter was merely a union depot company, and as such bound by the statute governing such companies, and requiring that their terms and condi-

tions shall be uniform for all railroads using or desiring to use their property. The Indianapolis company was defeated in that contention. It could have based its right to relief upon the Genis contract, and if it had done so and been successful, it would thereby have bound itself for the fifty years. It is obvious that when it filed its bill of complaint, and also when it amended the bill, it did not choose to put itself in that position. Under the case stated by it in its bill it had a right to quit using the property of the Pekin company and paying rent therefor whenever it chose. But having been defeated upon the basis it then selected as governing its relations with the Pekin company, the defendants now seek to defeat their bond by pleading that the Indianapolis company is in under the Genis contract, and only bound to pay what that contract requires; and also that the instrument sued upon is an involuntary bond, only binding the obligors to the extent the law permits; that the court had no power to require the payment of $1,875 per month, and that part of the order and of the bond is void; and that this is a mere indemnity bond, and plaintiff can not recover beyond what the Indianapolis company would have been legally liable under the Genis contract or what the use of the property was reasonably worth. We have duly considered these positions and arrived at the following conclusions :

First. If this is an involuntary bond, still the court had power to fix the conditions it did. The conditions for an injunction bond in this State are fixed by statute only in the case of enjoining the collection of a judgment. In all other cases the complainant must give bond with such conditions as the court may require, and if the court grants an application continuing an injunction in force, pending an appeal from a decree dissolving the same, the court may require such further bond as it may deem equitable. (R. S., Chap. 69, Secs. 9, 22.) On an appeal from any other than a money judgment or decree, the court is empowered to fix the conditions of the bond with reference to the character of the judgment or decree appealed from. (R. S., Chap. 110,

Sec. 67.) These statutory provisions have been liberally construed. (Billings v. Sprague, 49 Ill. 509; Barnes v. Brookman, 107 Ill. 317; Walker v. Pritchard, 135 Ill. 103, 110.) The Pekin company owned this railroad. It was not bound to let other railroads use its tracks and depots at all upon any terms. Unless the Indianapolis company had acquired some rights thereto by contract or otherwise the Pekin company had the right to exclude it from said terminals. Before the date of the contract between the Indianapolis company and the Terre Haute & Peoria Railroad Company, the Pekin company had notified the Indianapolis company that it could not use its terminals without paying $1,875 per month, as a fixed charge therefor. With such notice the Indianapolis company entered and used the property. Unless it had some contract or other legal right it was a tenant at will, bound to pay while it stayed at the rate it had been notified in advance would be charged. Still later it had been notified it would be excluded on a given date, one month later, unless it paid the arrears at the rate so named to it in advance. Resorting to a court of equity, it asserted as its only right to resist exclusion that the Pekin company was a union depot company bound to prescribe uniform terms and conditions to all railroads desiring to use its property, and that the Pekin company was violating this statute and practicing unlawful discrimination against the plaintiff. The Circuit Court decided it had no such right to resist such exclusion. It desired to appeal and to still retain the use of defendant's property. If the Circuit Court was right the Pekin company had lawful authority to expel the Indianapolis company, unless the latter paid the $1,875 per month. We think it was entirely equitable that the court should require as a condition of retaining the benefit of the injunction that complainant should give bond to pay its arrears upon said $1,875 per month from the date it began using defendant's property till the decision of the Appellate Court if the decree was affirmed. The only respect in which it was suggested the order requiring the bond was not equitable, is, that the Indianapolis company was in under the

Genis contract and thereby entitled to use the property at $1,083.33 per month, or that it was only bound to pay what the premises were reasonably worth, and therefore it ought not to be compelled to give bond for $1,875 per month. But that was not the case the Indianapolis company had made by its bill and proofs. The equity of the order is to be determined upon the case then before the court. The case made, was that the Pekin company was entitled to expel the Indianapolis company or collect at the rate of $1,875 per month from October 1, 1892, unless the Pekin company was a union depot company and bound to let all railroad companies use its property at uniform and reasonable rates. Under the case then before the court, if complainant wished its injunction continued pending the appeal, it was proper to require it to give bond, that if it did not succeed in its appeal it would pay the rental so fixed before it began to use the property.

Second. Whatever may be the rule in other States to which we are cited, such a bond is treated as a voluntary obligation in this State, and the party entering into it is estopped from denying that he is liable to the extent that the words bind him when strictly construed. Billings v. Sprague, 49 Ill. 509; George v. Bischoff, 68 Ill. 236; Mix v. The People, 86 Ill. 329; Barnes v. Brookman, 107 Ill. 317; Walker v. Pritchard, 135 Ill. 103, 110.

Third. It is urged that this is a mere bond of indemnity. That part of the bond which required the Indianapolis company to pay to the Pekin company "all damages sustained by it by the continuance in force of said injunction," was a provision for mere indemnity. But to hold that that portion of the order and bond providing for the payment of $1,875 per month from October 1, 1892, till the appeal was decided, meant mere indemnity, is to ignore the plain meaning of the language used and the facts which caused that requirement in the order. Complainant had set up that defendant had demanded a rental of $1,875 per month from October 1, 1892, and had threatened expulsion unless that rental was paid, and that it was not liable to pay said sum.

The defendant had answered asserting its right to make that charge, and to expel complainant if it was not paid. The court found for defendant and found the equities for defendant, and found complainant not entitled to an injunction restraining defendant from expelling complainant from its terminals, unless it paid $1,875 per month from October 1, 1892. Complainant wished an appeal and a continuance of the injunction pending the appeal. The order says as plainly as words can express it that complainant can have the injunction continued pending the appeal if it will give bond to pay defendant's demand of $1,875 per month from October 1, 1892, till the appeal is decided, in case the decree is affirmed. The bond is equally explicit that the obligors will pay the obligee $1,875 per month from October 1, 1892, till the determination of the appeal, if the decree is affirmed. All the facts show that is what the court required and meant to require and what complainant and its sureties agreed to.

Fourth. If the Genis contract bound these parties, and if there is no estoppel against setting it up by reason of failing to plead it in the chancery suit, still the Indianapolis company and its sureties by this bond entered into another and later agreement to pay $1,875 per month from October 1, 1892, till the determination of the appeal, and that contract is binding; and for that period of time the new contract supersedes the old. The continuance in force of the injunction and prevention of expulsion and the retention of the use of the terminals was an adequate consideration for the new contract.

Fifth. We hold the Indianapolis company estopped to now avail itself of the Genis contract. The issue in the chancery case was whether the Pekin company had the right to expel the Indianapolis company from its terminals unless it would pay $1,875 per month therefor from October 1, 1892, and enter into a satisfactory contract for the further use of said terminals. The Indianapolis company sought the aid of the court to prevent such expulsion, denying that the Pekin company could lawfully expel it or com-

pel it to pay such rentals. It was bound to bring forward and litigate, then, every document, statute or fact which entitled it to that relief. If it had more than one ground for such relief, it could not set up one in that suit and successfully reserve another as a basis for another suit or defense if the first ground failed. In order to avail of new grounds in a subsequent suit they must have been discovered since the first suit. In Hamilton v. Quimby, 46 Ill. 90, the court said : "A party can not litigate and try a cause by parts in different proceedings; he must bring his whole case before the court and have it disposed of in one proceeding." In Rogers v. Higgins, 57 Ill. 244, the rule was thus stated : "A party can not have a cause of action adjudicated upon piecemeal. * * * When the complainant before presented his cause of action before the court he should have brought forward and urged all the reasons which then existed for the support of it. The controversy can not be re-opened to hear an additional reason which before existed and was within the knowledge of the party in support of the same cause of action. * * * This principle of *res adjudicata* embraces not only what was actually determined in the former case, but also extends to any other matter properly involved, and which might have been raised and determined in it." In Ruegger v. I. & St. L. R. R. Co., 103 Ill. 449, the court approved the cases just cited, and further said: "The complainant was bound to bring forward every objection that existed to the validity of the tax, and if he failed to do so he can not, in a subsequent suit, urge an objection which he might have insisted upon in the former action. Litigation must have a termination, and when a matter has been in issue and the parties before the court and opportunity afforded to assert their rights, they must be held concluded from afterward litigating them in another proceeding." In Bailey v. Bailey, 115 Ill. 551, it is said: "When the complainant went into court with his first bill it was his duty to bring forward and present all the claims and title which he then had on the property." In Allen v. Haley, 169 Ill. 532, the court said: "The adjudication determining the

damage to the appellant is conclusive, as a judgment of a court possessing jurisdiction of the parties and subject-matter is final, not only in reference to the matters actually litigated, but as to all other matters properly involved, and which the parties might have raised and had determined." Perhaps the rule is most fully and completely stated in a quotation from ancient authorities in Litch v. Clinch, 136 Ill. 410, 425, as follows: "Where a given matter becomes the subject-matter of litigation in, and of adjudication by, a court of competent jurisdiction, the court requires the parties to bring forward their whole case, and will not, except under special circumstances, permit the same parties to open the same subject of litigation in respect to a matter which might have been brought forward as a part of the subject in contest, but which was not brought forward, only because they have, from negligence, inadvertence, or even accident, omitted a part of their case. The plea of *res judicata* applies not only to the point upon which the court was required by the parties to form an opinion and pronounce a judgment, but to every point which properly belonged to the subject of litigation, and which the parties, exercising a reasonable diligence, might have brought forward in time." Briscoe v. Lloyd, 64 Ill. 33; Harmon v. Auditor, 123 Ill. 122; Cheney v. Patton, 144 Ill. 373.

"A final decree in chancery is as conclusive as a judgment at law. Such decrees are available as estoppels; whether the second action involving the same question be at law or in equity." (The People ex rel. v. Rickert, 159 Ill. 496.) Under these rules we are of opinion that the Indianapolis company is estopped, and therefore its sureties are also estopped from pleading or proving the Genis contract as a defense to this suit upon the bond.

The judgment is affirmed.